## WILLIAM C. LANGDON, BY GUARDIAN, *v.* BAXTER NATIONAL BANK.

*Guardian. Negotiable Bond, Purchaser Of, When Put Upon Inquiry. Innocent Purchaser. Replevin.*
R. L. s. 1230.

A former guardian of the plaintiff's ward pledged to the defendant bank to secure his own note two negotiable bonds owned by the ward, on which bonds was an endorsement tending to show the ward's ownership, and which was seen by the cashier at the time of the negotiation; *Held*, (1) that the defendant was not entitled to the protection of an innocent purchaser; that it was put upon inquiry, and that it was not sufficient to only inquire of the guardian; (2) that the plaintiff could recover the bonds in an action of replevin; (3) that the settlement of the guardian's account in the Probate Court did not affect the title to the bonds.

Replevin for two District of Columbia bonds of $1,000 each. Plea, general issue. Heard on an agreed statement of facts by the court at the September Term, 1884, Veazey, J., presiding. Judgment for the plaintiff. On September 13, 1869, John H. Langdon of Castleton was appointed by the Probate Court guardian of his brother, William C. Langdon, an insane person. The ward's estate consisted partly of United States bonds. These having been called in, the guardian purchased from C. S. Sherman with the money, in March, 1878, the bonds in question, which were dated July 1, 1873, and payable to J. & W. Selligman &

Co., or bearer, July 1, 1891, having interest coupons thereto attached. Said Sherman had previously written upon the back of each of said bonds the words, "The property of C. S. Sherman," and when he sold said bonds to said guardian he wrote upon each of them under said endorsement the further words, "I hereby sell, transfer, and assign without recourse to William C. Langdon," signing his name thereto on one of said bonds, and omitting to do so upon the other.

On January 21, 1879, the said John H. Langdon borrowed of the defendant the sum of $1,500, for which he gave his personal note, and deposited with the bank as collateral to the note, the bonds in question.

The business was transacted with the cashier, G. R. Bottum. The cashier knew John H. Langdon, who had been a customer of the bank since its organization, and was a member of two firms keeping their accounts therein, and he was considered a reputable and reliable man ; but the cashier did not know said William C., had never heard of him, and knew nothing of said guardianship until after the note became due, and a few months before said J. H. Langdon died. When the cashier learned of the guardianship matter, said Langdon was in failing circumstances ; but previously he had understood that he was a man of some means. At the time of the transaction said Bottum observed the endorsements upon the bonds, and called Langdon's attention to the same, and he said to Bottum that the bonds belonged to him. Bottum believed what he said as to his ownership of the bonds, and made no further inquiry. The directors approved the transaction. The estate of said John H. Langdon is insolvent, and his guardianship bond worthless. The plaintiff is the present guardian of William C. He found assets of said estate, aside from the bonds in suit, to the amount of about $4,000 only. Upon the settlement of J. H. Langdon's guardianship account by his administrator in the Probate Court, a balance of $12,309.97 was found against his estate.

*W. C. Dunton & Edward Dana,* for the defendant.

The memorandum on the bonds did not affect their negotiability. *Smith* v. *Clark,* 1 Peake, 225 ; *Peacock* v. *Rhodes,* 2 Dougl. 611 ; *Sigourney* v. *Lloyd,* 8 B. & C. 622 ; *Courser* v. *Tatum,* 24 Ark. 13 ; *Allenworth* v. *Moore,* 3 Iowa, 273 ; Byles Bills, 149, 162 ; 1 Jac. Fish. Dig. 1191. Bonds payable to bearer circulate as money ; and the *bona fide* possessor is therefore the owner. *Murray* v. *Laremer,* 2 Wall. 110. The bank was not put upon inquiry. *Calais Steamboat Co.* v. *Scudder,* 2 Black, 214 ; *Buttrick* v. *Holden,* 13 Met. 355. A party dealing with a guardian has a right to presume that he acts for the benefit of his ward, and is not bound to inquire into the state of the trust. *Ashton* v. *Atlantic Bank,* 3 Allen, 217 ; *Dillaye* v. *Bank,* 51 N. Y. 345 ; *Field* v. *Schieffelin,* 7 Johns. Ch. 150 ; 1 Perry Trusts, 225 ; R. L. ss. 2445, 2459 ; *Rayner* v. *Pearsall,* 3 Johns. Ch. 578 ; *Yerger* v. *Jones,* 16 How. 37 ; *Hertell* v. *Bogart,* 9 Paige, 57. The bonds were negotiable as bank bills. 2 Dan. Neg. Ins. 435, 438. *See* also Byles Bills, 257 ; *Hotchkiss* v. *Bank,* 21 Wall. 354 ; *Swift* v. *Tyson,* 16 Pet. 1 ; *Spooner* v. *Holmes,* 102 Mass. 503 ; *Collins* v. *Gilbert,* 94 U. S. 753 ; *Hamilton* v. *Vought,* 34 N. J. L. 187 ; *Benoir* v. *Paquin,* 40 Vt. 199 ; *Powers* v. *Ball,* 27 Vt. 662. The bank was a *bona fide* holder for value. 1 Dan. Neg. Ins. s. 824 ; *Keyes* v. *Wood,* 21 Vt. 331 ; *Sawyer* v. *Phaley,* 33 Vt. 69. The claim was merged in the judgment of the Probate Court. 123 Mass. 270 ; 13 Wall. 465 ; Freem. Judg. s. 31. Replevin will not lie. 32 Vt. 125 ; 43 Vt. 125 ; 20 Pick. 55 ; 36 N. H. 278 ; 55 N. H. 593 ; 47 Conn. 154.

*Prout & Walker* and *Beeman & Platt,* for the plaintiff.

The bank cannot be regarded as an innocent purchaser. The endorsement of the transfer on the bonds was sufficient to put the cashier upon inquiry ; and he should have inquired of Sherman or the ward. *Shaw* v. *Spencer,* 100 Mass. 382 ; *Fisher* v. *Brown,* 104 Mass. 259 ; Wade Not. 15,

90, 313 ; *Roth* v. *Colvin*, 32 Vt. 125 ; *Gould* v. *Stevens*, 43 Vt. 125 ; *Sanford* v. *Norton*, 14 Vt. 234 ; *Bank* v. *McDonald*, 127 Mass. 82 ; *Ormsbee* v. *Howe*, 54 Vt. 182 ; *Dinsmore* v. *Duncan*, 57 N. Y. 573 ; *Loring* v. *Brodie*, 134 Mass. 453 ; 14 Pet. 218.

The opinion of the court was delivered by

POWERS, J. The settlement of the guardian's account in the Probate Court was no adjudication upon the title to these bonds. No order or decree respecting the bonds was there made ; and in fact the existence of such bonds was not disclosed to that court.

Our statute relating to the action of replevin is broad. It gives the action to any person entitled to the possession of goods unlawfully detained by another. R. L. § 1230.

· Guardians, trustees, and other persons, acting in a representative capacity, are not excluded in terms, and should not be by implication. There is as strong reason why a recovery of goods *in specie* by them is essential to the protection of those for whom they act as in the case of a true owner. The statute is a decisive answer to the objection made to the form of action. The case calls for no action looking to the enforcement of a trust. The plaintiff is seeking to recover the possession of his ward's estate. His commission as guardian entitles him to assert this legal right. Hence he has no occasion to resort to a court of equity.

A *bona fide* purchaser for value of these bonds would take a perfect title to them. This is the rule in all the courts in this country, Federal and State. It is said that the rule in Vermont opens a wider door for inquiry in cases of this kind than is found in other states and in the Federal courts ; but it is doubtful, whether, upon a careful reading of the cases, any real difference in the rule itself or in its application will be found. In all, the holder of negotiable paper purchased under due must be a *bona fide* holder; and

whether he bears that character in the transactions is a question always open to inquiry. This is as far as the Vermont cases have gone; and in other jurisdictions cases have taken the same trend. In all jurisdictions *bona fides* is the basis of protection.

The offer to sell these bonds to the cashier was itself— nothing else appearing—a representation that John H. Langdon was the owner. But something else did appear touching his title. The bonds carried an endorsement upon them tending to show title in W. C. Langdon, which endorsement was seen by the cashier and inquired about in his negotiation with John H. Notice of a fact fatal, if true, to the title of John H. came to the knowledge of the purchaser before he bought the bonds. In legal significance, it stood as if W. C. Langdon had told the cashier that he was the owner. If W. C. had personally given him such notice, and he had bought, he would assume the hazard of a disputed ownership. He could not claim the protection of an innocent purchaser. The notice he had from the endorsement upon the bonds put him upon inquiry. The title of John H. was evidenced by his possession and by his declarations. The title of W. C. was evidenced by the memorandum on one, and the assignment upon the other. The title of W. C. might be genuine, even if John H. had possession. If a stranger had stood as John H. did, having the bonds in his possession, and declaring his ownership, it probably would not be held anywhere, that the protection accorded to innocent purchasers could be invoked to defeat the rights of the true owner, when evidence of his ownership was carried upon the paper itself.

When a purchaser is put upon inquiry, his inquiry must be made in a direction likely to lead to knowledge of the facts. If a thief should offer paper for sale which disclosed grounds for inquiry to a purchaser, inquiry of the thief alone would not satisfy the rule. No more can the rule be thus satisfied because the seller is an honest man. Here

the direction the inquiry should take was plainly indicated by the paper offered for sale; and inquiry followed up in that direction would have resulted in knowledge that W. C. Langdon was the true owner.

Judgment affirmed.